**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DESTINY REDDICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 4:25-CV-00099 HEA |
| | ) |
| MARYVILLE UNIVERSITY, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

Self-represented plaintiff Destiny Reddick brings this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 1981 and 42 U.S.C. § 1983, seeking monetary damages. The matter is now before the Court upon the motion of plaintiff for leave to proceed in forma pauperis, or without prepayment of the required filing fees and costs. [ECF No. 3].

Having reviewed the motion and the financial information submitted in support, the Court will deny the motion to proceed in forma pauperis, as plaintiff has sufficient funds to pay the $405 filing fee. Plaintiff will be given twenty-one (21) days to pay the fee. Additionally, after review of plaintiff's complaint, the Court will order plaintiff to amend her pleading on a Court-provided Employment Discrimination Complaint form in compliance with Local Rule 2.06(A) within twenty-one (21) days of the date of this Opinion, Memorandum and Order. Plaintiff's failure to amend her pleading in the time specified will result in a dismissal of this action, without prejudice. As plaintiff is bringing claims under Title VII, she will also be required to provide the Court with a copy of her charge of discrimination from the Equal Employment Opportunity Commission (EEOC), as well as a copy of her notice of right to sue. Plaintiff's failure to file these documents will result in a dismissal of her Title VII claims.

**The Complaint**

Plaintiff Destiny Reddick brings this lawsuit against her former employer, defendant Maryville University, a private college in St. Louis, Missouri, after her alleged constructive discharge from Maryville in January of 2021. Plaintiff also names Mascheal Schappe, the Caucasian Dean of the School of Education at Maryville, as a defendant in this action.[1] As noted above, plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 1981 and 42 U.S.C. § 1983, seeking monetary damages.

Plaintiff's allegations are set forth in a haphazard manner, partially on a Court-provided Civil Complaint form, and partially in a typewritten "Statement of Claim" submitted as an attachment to the Civil Complaint form. *See* ECF No. 1. Additionally, on January 28, 2025, plaintiff filed a "Memorandum to Clerk" stating that she would like to "swap" a new typewritten "Statement of Claim," for the prior "Statement of Claim," which she appended to her Memorandum. *See* ECF No. 4.

According to the "Statement of Claim" filed on January 28, 2025, ECF No. 4, which the Court will take as the operative pleading, plaintiff is an African American, who worked as an Assistant Dean at Maryville University starting in the year 2018. She claims that she was picked to lead diversity efforts, which made her uncomfortable. She claims that she was pressured to take the position by the Vice President of Academic Affairs, Mary Ellen Finch, to fulfill service obligations for tenure. Although plaintiff indicates that she first began working at Maryville University in 2015, she does not indicate what employment position she was in between 2015 and 2018, when she first took the position of Assistant Dean.

---

[1] Dean Schappe is sued in both her individual and official capacities.

Plaintiff alleges that starting in 2015, and up until her purported constructive discharge in 2021, she was subjected to racial harassment, discrimination and retaliation by her white female supervisor, Mascheal Schappe. Plaintiff fails to articulate what behaviors by Schappe were specific to discrimination versus harassment versus retaliation. Instead, she lumps all three alleged discriminatory actions together and states in a conclusory manner that Schappe did the following to discriminate, harass and retaliate against her over a six-year period: (1) made comments about black identity; (2) implied her marriage was based on colorism; (3) undermined her role as a black leader by questioning her intelligence and professionalism; (4) threw a pen at plaintiff during a meeting (presumably with Human Resources) about Schappe's behavior; (5) gave racially themed gifts, including a "Black, Beautiful, and Woo" necklace which plaintiff believed was intended to demean and tokenize her identity; and (6) escalated micromanagement and public criticism after Human Resources told Schappe to stop discussing race. From the list provided by plaintiff in her Statement of Claim, she appears to be alleging a racially hostile work environment/harassment by defendant Schappe instead of discrimination or retaliation.

Plaintiff asserts that between the years 2015 and 2021, she made multiple informal complaints about Schappe to Diversity, Equity and Inclusion staff members, as well as "high level administrators." Plaintiff also states that she complained about Schappe to the Human Resources Director, April Santos. Plaintiff's complaints, however, apparently did not cause a change in Schappe's behavior.

Plaintiff claims that at one point, in May 2020, she took twelve weeks of Family and Medical Leave, which was approved by Human Resources in "recognition that the leave was directly tied to mental health impacts caused by Schappe's racial hostility, retaliation and harassment." Plaintiff also alleges that two white male staff members who lead racial equity work at Maryville were not retaliated against by Schappe and were not subject to racial targeting.

Plaintiff indicates that she resigned from her position in January of 2021, although she claims it was a constructive discharge. It is unclear from plaintiff's pleading what events lead to her alleged constructive discharge.

Plaintiff seeks approximately four million dollars in damages in this action.

## Discussion

### A. Plaintiff is Required to Amend her Complaint on a Court-Form

Because plaintiff failed to fill out the Court's Employment Discrimination Complaint form, and due to the fact that plaintiff's pleading is scattered and difficult to discern, the Court will require plaintiff to amend her pleading the Court's Employment Discrimination Complaint form. In completing the amended complaint, plaintiff must follow Rules 8 and 10 of the Federal Rules of Civil Procedure. Her self-represented status does not excuse her from following the Federal Rules of Civil Procedure or the Local Rules of this Court. *See Ackra Direct Mktg. Corp. v. Fingerhut Corp.,* 86 F.3d 852, 856-57 (8th Cir. 1996).

Rule 8 requires plaintiff to set forth a short and plain statement of the claim showing entitlement to relief, and it also requires that each averment be simple, concise, and direct. Rule 8(a)(2) sets forth a "notice pleading standard" and simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002).

Rule 10(b) requires plaintiff to state her claims in separately numbered paragraphs, each limited as far as practicable to a single set of circumstances. Each count shall then set forth in separate, numbered paragraphs: 1) the relevant facts supporting the claim; 2) the constitutional, statutory, or other right that defendant violated; and 3) the relief plaintiff seeks for the claim (for example, money damages or equitable relief). Plaintiff shall follow the same format with respect

- 4 -

to each claim. In stating the facts of a claim, plaintiff must describe the conduct she alleges is unlawful and the date(s) such conduct occurred, if known. In other words, plaintiff must describe the adverse employment action(s) she believes was taken, when it was taken, why it amounted to discrimination or other unlawful conduct, and the basis for such discrimination or unlawful conduct, that is, race, disability, etc.

The Court will direct the Clerk of Court to provide plaintiff with an Employment Discrimination Complaint form, and plaintiff will have twenty-one (21) days from the date of this Memorandum and Order to file an amended complaint on the form provided. The amended complaint must be signed under penalty of perjury and completed in accordance with the instructions provided in the form as well as the instructions provided in this Opinion, Memorandum and Order.  Plaintiff is cautioned that the filing of an amended complaint completely replaces all earlier filed complaints in this action. Claims that are not realleged are deemed abandoned. *E.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 928 (8th Cir. 2005).

### B.  Plaintiff is Required to Pay the Full Filing Fee of $405 to Proceed in this Action

Simultaneously with the filing of her complaint, plaintiff filed a motion to proceed in this case without payment of the filing fee. [ECF No. 3]. In her motion, plaintiff states that she is currently employed, and her yearly wages are approximately $84,500.  Plaintiff indicates that she is bringing home roughly $2,034 per pay period, although plaintiff fails to indicate how often she is paid. She also states that she has around $424 cash on hand.

In terms of debts and liabilities, plaintiff appears to assert that she has monthly expenses of approximately $5,500. However, some of the debts listed by plaintiff do not appear to be regular monthly expenses, and it is not clear if plaintiff is sharing some of these expenses with another person. Additionally, she has listed a monthly car loan, but she has failed to list a car as

an asset. Further, although plaintiff lists two dependents on her financial statement, she mentions in her complaint that she is recently divorced. Thus, it is unclear if she is receiving child support to assist in supporting her dependents' needs, or if another adult is assisting the children by providing part-time custody.

The Court may authorize the commencement or prosecution of a civil action without prepayment of fees if the plaintiff demonstrates he or she "is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). In forma pauperis status is a matter of privilege, not of right. *Williams v. McKenzie*, 834 F.2d 152, 154 (8th Cir. 1987). To enjoy the statute's benefits, a litigant need not show that she is "absolutely destitute," but she must demonstrate that, because of her poverty, she cannot pay for the litigation costs and still be able to provide for the necessities of life. *Adkins v. E.I. DuPont de Nemours & Co.,* 335 U.S. 331, 339 (1948). Determining whether an applicant is sufficiently impoverished to qualify under § 1915 rests within the sound discretion of the trial court. *Cross v. General Motors Corp.,* 721 F.2d 1152, 1157 (8th Cir. 1983), *cert. denied*, 466 U.S. 980 (1984).

In this case, the Court is unable to calculate plaintiff's monthly income versus expenses from the financial information provided by plaintiff in her motion. *See Bey v. Kelly*, 2021 WL 4713416, at *1 (D. Kan. Sept. 8, 2021) ("In considering a request to proceed in forma pauperis, the court will compare an applicant's monthly income and cash on hand to her monthly expenses and financial obligations."). Furthermore, the Court notes that plaintiff currently has sufficient cash on hand to pay the entire $405 filing fee.

Based on the financial information provided in plaintiff's motion, the Court does not find that plaintiff has demonstrated that, because of her poverty, she cannot pay for the litigation costs and still be able to provide for the necessities of life. *Adkins*, 335 U.S. at 339. *See, e.g., Andrews v. Nicholson*, 2005 WL 2403449 (W.D. Mo. Sept. 28, 2005) (denying in forma pauperis status to

plaintiff who reported a net income of $1,934.00 per month with two dependents, and $200.00 of available cash). As such, the Court finds that plaintiff does not meet the economic requirements for in forma pauperis status and her motion will be denied. If plaintiff wishes to proceed with this action, she must pay the $405 filing fee within twenty-one (21) days of the date of this Order.

### C. Race Discrimination Claims in Employment Under 42 U.S.C. § 1981

Plaintiff asserts that she is pursuing claims of race discrimination, harassment and retaliation against Maryville University and Mascheal Schappe pursuant to 42 U.S.C. § 1981. However, as set forth above, the claims in her complaint and accompanying "Statement of Claim" appear to assert a hostile work environment/harassment claim. As written, the Court is unsure that plaintiff has set forth race discrimination or retaliation claims under § 1981.

Title 42 U.S.C. § 1981 provides in pertinent part:

> All persons . . . shall have the same right . . . to make contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Supreme Court recently clarified that for a claim under § 1981 plaintiff "must initially plead and ultimately prove that, but for race, [she] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Natl'l Assoc. Afr. Am.-Owned Media,* 140 S. Ct. 1009, 1019 (2020) (holding that a § 1981 plaintiff must prove that their race was a but-for cause of the discriminatory action) (emphasis added); *see also Bostock v. Clayton Cnty.,* 140 S. Ct. 1731, 1739 (2020) (explaining events may have more than one but-for cause).

To establish a prima facie case under § 1981, a plaintiff must properly allege: (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts). *Bediako v. Stein Mart, Inc.,* 354 F.3d 835, 839 (8th Cir.2004). Plaintiff

does not have to plead in her complaint that race was the only factor in an employment action (such as a termination), but that it was at least one factor that was the "but for" cause of race discrimination.[2]

### D. Plaintiff's Employment Claims Against Maryville and Schappe under 42 U.S.C. § 1983

Plaintiff also states in her complaint that she is pursuing claims against Maryville University and defendant Schappe pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation of that right was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Courts have consistently held that private universities, and their employees, are not state actors for purposes of § 1983. *See Andela v. Univ. of Miami*, 461 F. App'x 832, 836 (11th Cir. 2012); *Driessen v. Univ. of Miami Sch. of L. Child. & Youth L. Clinic,* No. 1:20-CV-22559-UU, 2020 WL 13368589, at *2 (S.D. Fla. June 23, 2020), *aff'd* 835 Fed.Appx. 489 (11th Cir. 2020); *Driessen v. Univ. of Miami Sch. of L. Child. & Youth L. Clinic*, No. 19-21224-CIV, 2019 WL 8895219, at *2 (S.D. Fla. Sept. 24, 2019); *Althiabat v. Howard Univ.*, 76 F. Supp. 3d 194, 197 (D.D.C. 2014).

Moreover, the receipt of federal funds "do[es] not elevate [ ] private educational institutions to the status of 'state actor.'" *Richards v. Duke Univ.,* 480 F. Supp. 2d 222, 239 (D.D.C. 2007); *see Manhattan Cmty. Access Corp. v. Halleck,* 587 U.S. 802, 814 (2019); *Siyu Yang v. Ardizzone*, 540 F. Supp. 3d 372, 380 (W.D.N.Y. 2021), *aff'd sub nom. Yang v. Eastman Sch. of Music*, No. 21-1482-CV, 2022 WL 1040418 (2d Cir. Apr. 7, 2022) ("[A] private entity does not become a

---

[2]A plaintiff may pursue a claim against an individual defendant for discrimination and/ or retaliation under 42 U.S.C. § 1981. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446 (2008). If plaintiff wishes to do so, however, she needs to clarify in her amended complaint that she is pursuing such a claim against defendant Schappe.

state actor for purposes of § 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government.") (citing *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)). As such, plaintiff is unable to sue Maryville University and defendant Schappe for employment discrimination under 42 U.S.C. § 1983.

### E. Plaintiff's Employment Claims Against Maryville and Schappe under Title VII

Last, plaintiff sues Maryville University and defendant Schappe under Title VII for race discrimination, retaliation and harassment/hostile work environment. As set forth in more detail below, prior to bringing a Title VII case to federal court, a litigant is required to exhaust her administrative remedies with the EEOC. Plaintiff has not yet shown that she has exhausted those remedies, and she will be required to do so. Additionally, individual supervisors (like Schappe) are not subject to suit under Title VII. Further, as noted above, plaintiff's allegations within her complaint, as stated, fail to show either discrimination or retaliation claims.

#### 1. Plaintiff Has Failed to Show she Exhausted her Administrative Remedies Prior to Filing this Lawsuit

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an individual because of her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. "In order to initiate a claim under Title VII a party must timely file a charge of discrimination with the EEOC and receive a right-to-sue letter." *Stuart v. General Motors Corp.*, 217 F.3d 621, 630 (8th Cir. 2000). Receiving the letter is a "prerequisite [] to maintenance of a Title VII action in federal court." *Houston v. St. John's Mercy Skilled Nursing Ctr.,* 37 F.3d 1503 (8th Cir. 1994) (per curiam table decision); *accord Jones v. Am. State Bank,* 857 F.2d 494, 499 (8th Cir. 1988) (holding that receipt of a right-to-sue notice is "a condition precedent to a filing of a Title VII claim"). Consequently, the Court will order the plaintiff to supplement her amended complaint by submitting copies of both her charge of discrimination and her EEOC right to sue within twenty-one (21) days of the date of this Order so that the Court may ascertain whether plaintiff's claims

in her amended complaint are like or reasonably related to the claims outlined in her charge of discrimination. *Duncan v. Delta Consolidated Indus., Inc.,* 371 F.3d 1020, 1024 (8th Cir. 2004). Plaintiff's failure to provide the charge of discrimination and the right to sue letter will result in dismissal of her Title VII claims.

### 2. Supervisors are not Individually Liable under Title VII

Plaintiff sues her supervisor at Maryville University, Mascheal Schappe pursuant to Title VII. However, plaintiff cannot state a federal claim under Title VII against this defendant because Title VII provides a remedy only against an employer. The Eighth Circuit Court of Appeals has "squarely held that supervisors may not be held individually liable under Title VII." *Bonomolo-Hagen v. Clay Central-Everly Cmty. Sch. Dist.,* 121 F.3d 446, 447 (8th Cir. 1997) (citing *Spencer v. Ripley Cty. State Bank*, 123 F.3d 690, 691-92 (8th Cir. 1997)); *see also Bales v. Wal-Mart Stores Inc.,* 143 F.3d 1103, 1111 (8th Cir. 1998).

### 3. Race Discrimination under Title VII

Plaintiff states that she is suing for race discrimination in her employment pursuant to Title VII. However, as stated above, it appears that her claims in her complaint are related to a hostile work environment/harassment claim, rather than a race discrimination claim.

To allege a race discrimination claim under Title VII, plaintiff must allege that she is a member of the protected class, she was meeting the employer's legitimate job expectations, she suffered an adverse employment action and was treated differently than similarly situated employees who were not members of her protected class. *Jackman v. Fifth Judicial Dist. Dep't. of Corr. Servs.,* 728 F.3d 800, 804 (8th Cir. 2013). Thus, not only must plaintiff articulate in her amended complaint what her race is (black), how she was racially discriminated against, and how she believes she was meeting the employer's legitimate job expectations, but she should also articulate in her amended complaint how she believes she was treated differently than those who

were not of her same race but were not terminated or disciplined for acting similarly. Ultimately, to survive summary judgment on a Title VII race discrimination action, plaintiff would have to show "some injury" respecting her employment terms or conditions. *See Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 359-60 (2024). As currently stated, plaintiff has not articulated in her" Statement of Claim" exactly how she was treated differently in the terms and conditions of her employment. If she chooses to pursue her race discrimination claim under Title VII in her amended complaint, she must take care to elucidate this type of discrimination.

### 4. Retaliation under Title VII

As for retaliation, which it appears that plaintiff is alleging under both Title VII and § 1981, plaintiff must also properly allege these claims under both statutes separately. The Court notes that although Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]," not every adverse employment action can be considered retaliation under Title VII. 42 U.S.C. § 2000e-3(a).

To establish a prima facie case of Title VII retaliation, plaintiff must show that: (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct. *Jackman*, 728 F.3d at 804 (characterizing "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects" as adverse employment actions). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Clegg v. Ark. Dep't of Corr.,* 496 F.3d 922, 926 (8th Cir. 2007).

It is unclear from the complaint what action by defendant(s) plaintiff believes to be retaliatory. When plaintiff drafts her amended complaint, she needs to clearly state which claims

- 11 -

she believes to be discrimination versus retaliation versus hostile work environment/harassment. She should state facts under each of those claims that relate to stated events. Additionally, plaintiff has failed to make it clear in her "Statement of Claim" what she believes was the "adverse action" taken against her such that Schappe was engaging in racially retaliatory behavior. If plaintiff wishes to pursue a retaliation claim under either § 1981 or Title VII, she will need to indicate the alleged adverse action.

### 5. Harassment/Hostile Work Environment under Title VII

A "hostile work environment" occurs when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.,* 510 U.S. 17, 21 (1993) (citations omitted). By their nature, hostile work environment claims are not isolated incidents, but rather entail ongoing and repeated conduct. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002). To sustain a claim for hostile work environment, a plaintiff must show that (1) she is a member of a protected class; (2) she is subjected to unwelcome race-based harassment; (3) the harassment was because of membership in the protected class; and (4) the harassment affected a term, condition, or privilege of her employment. *Anderson v. Durham D & M, L.L.C.,* 606 F.3d 513, 518 (8th Cir. 2010).

To state a hostile work environment claim, "[t]he workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive. The environment must be both objectively hostile as perceived by a reasonable person and subjectively abusive as actually viewed by [the plaintiff]." *Id.* "[W]hen a plaintiff attempts to establish a hostile work environment based on the actions of co-workers, he or she must then present evidence that the employer knew or should have known about the harassment and failed to respond in a prompt and effective manner." *Id.* at 519 (citation omitted).

- 12 -

Plaintiff complains that she faced several challenges at Maryville University over a six-year time. Reviewing her current "Statement of Claim," plaintiff has not alleged that the workplace at Maryville University was filled with such a racially charged environment in that six-year time that the actions were so severe and pervasive that a reasonable person could view such actions as abusive toward plaintiff. *Anderson*, 606 F.3d at 519. However, it may be that plaintiff's amended complaint can set forth her allegations in a more complete manner such that she is able to indicate additional ongoing and repeated conduct of purported racial harassment.

### Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel. [ECF No. 2]. The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). *See also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) (stating that "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case"). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail,* 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that she can adequately present her claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be

complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis [ECF No .3] is **DENIED without prejudice.**

**IT IS FURTHER ORDERED** that plaintiff shall pay the $405 filing fee within twenty-one (21) days of this Opinion, Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail plaintiff a Court-provided form for filing an Employment Discrimination Complaint.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint, within **twenty-one (21) days** of the date of this Order, on the Court-provided Employment Discrimination Complaint form in accordance with the instructions set forth in that form and in this Memorandum and Order. Plaintiff shall attach to her amended complaint a copy of her EEOC notice of right to sue and charge of discrimination from the EEOC.

**IT IS FURTHER ORDERED** that if plaintiff fails to pay the full filing fee in a timely manner, or timely file her amended complaint in compliance with this Court's Order, this case will be dismissed, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [ECF No. 2] is **DENIED at this time.**

Dated this 15th day of May, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE